May it please the Court, Mike Hinckley appearing for on behalf of Lloyd Myers. And, Your Honors, I will be hoping to leave two minutes at the end for where I go. All right. When it gets down to yellow, that's two minutes. I'll also try to remind you. Thank you very much. Can you keep your voice up? I'm having a little trouble hearing. Oh, certainly. Absolutely. Thank you very much. Might I begin? Thank you. Your Honors, Mr. Myers is a seriously ill indigent defendant who resides out of State. He received a court-appointed lawyer to assist him in the trial process. He fought the case for nearly three years. When the case was set and ripe to be set for trial, his counsel requested a settlement conference. The government expressed doubt that it would be helpful in light of the history of the case and their dealings with Mr. Myers, but agreed, eventually agreed to participate. Do you have any evidence that Mr. Myers did not want a settlement conference? No. There's no evidence in the record that Mr. Myers did not want a settlement conference. The judge agreed and was supportive of the idea. And the case was referred to the magistrate judge for a settlement conference for that purpose. Now, the process for the settlement conference is set forth in the local rules and also set forth in the court order issued by the magistrate judge who does the settlement conferences, and by their terms, both the local rule and the court order, it is our opinion, violate Rule 11c. Specifically, Rule 11c is, and this is quoting U.S. v. Bruce, absolute prohibition on all forms of judicial participation in the plea negotiation process. The parties participated in that plea negotiation, and it was fruitful, despite the government's misgivings at the beginning. The fruit that was bore was there was a negotiated plea agreement. May I ask you, you know, of course, other Rule 11 violations are subject to waiver. Why wouldn't this be subject to waiver? Well, Your Honor, it's our position that the government does a good job in its brief, I believe, of pointing out that the line from the Davila opinion that all the Rule 11 prohibitions and rules are one have no greater weight than the other. So they're all equal. However, I do think it's important to note, while they all may be equal and some have been determined subject to waiver, they're not all the same. The cases cited by the government refer largely to waiving your right to having statements used against you. 11c, however, is a prohibition for conduct of the court designed for reasons which go beyond Mr. Myers and the defendant. It kind of puts us in an odd position where I don't even know if you need Davila to extract the rule. The rule says what it says. So you could say, well, let's look at the plain language of the rule, and it says we shouldn't have judicial participation, and it may not distinguish there between magistrate, judge, and district court, but it says judicial. So your client appears to want a settlement conference. His lawyer wants a settlement conference. They have a settlement conference in the face of very clear language in Rule 11c, and now he says, but that's illegal. So I'm not sure why we wouldn't look at it either under invited error or under waiver. Maybe you can elaborate on that. Certainly. Well, as to the — I would point out that the — Davila, of course, was not decided at the point that they entered into the — this process. No, but Davila had been decided, or at least cert had been granted by the time of the sentencing, correct? Right. So for the lawyer's perspective, the issue is way on the table at that point, right? But they still don't say anything to the court. Correct. Well, I think the — part of the problem — well, maybe I should back up and answer your first question. First, on the invited error, the Perez case, which is an en banc opinion from this court, specifically says that the invited error doctrine is limited to the rights that are deemed to be waived. So the question — so the invited error doctrine becomes part of the waiver analysis. So can it be waived? And it is our position that 11c1 is not proper for waiver. One is that it's not a right. As I said, it's not that the defendant has a — is given a right to have the court behave in this way. The rules set forth how the court is supposed to conduct itself for reasons that he will be the benefit of. But isn't that contrary to Davila's treatment of all the parts of Rule 11 as similar to each other, to say this one's not a right, but I guess the other ones are? It seems inconsistent with that, isn't it? Well, Davila's opinion is not — is not discussing waiver. Davila is discussing whether or not they're all important. And I think Davila essentially says that — And whether plain error can apply, which is a similar concept, right? Like, whether you needed to object — I mean, presumably, you object to things that are hurting you, and so it's something that you're interested in. And wouldn't that carry over to the idea that these are all similarly situated? Well, Davila, of course, left open the issue of plain error, whether it should be plain error or harmless error, because of the specifics of — the factual specifics here. So saying that there was — And specifics in Davila, it's interesting. I mean, the whole issue there, as reviewed by the Supreme Court, was did the Eleventh Circuit err in vacating the plea agreement when the magistrate judge, during a procedure involving whether or not he was going to keep his counsel, the defendant was going to keep his counsel or not, made some statements regarding whether or not, you know, he should plea, sort of forceful statements, actually, on that. And then upon reviewing it, the Supreme Court seems to say, well, the Eleventh Circuit jumped the gun. They didn't really look at the totality of all that occurred. And they need to look at that first before deciding whether Rule 52a applies or Rule 52b applies. And if you — based on the language and how it's described, I mean, Justice Ginsburg says, you know, there was a very excellent colloquy that took place. It was very well done here. You know, the change of plea proceeding, the judge did a fine job of reviewing whether or not it was voluntary or not. There also was time between when the settlement conference occurred and the change of plea. And I guess most compellingly, in this case, it was a voluntary settlement conference. The defendant wanted it. And then when you look at it, he got a very favorable plea from what I can see, I mean, a favorable sentence. I mean, I think it's 18 months. So I'm just trying to figure out, applying Davila, even if you want us to apply the same posture, how do we not look at those factors and say, you know, there's no violation here? Or at least no violation of his substantial rights under the plain error test. Well, I believe that whether the — whether there is — going to the plain error test, and I believe harmless error, and we briefed it, our belief is that harmless error should apply for many reasons. But as to the substantial rights, that portion of the plain error test, we need to prove whether or not there's a reasonable probability that but for the error, it would have been different. So the error is this settlement conference. Unlike all the other cases where we have — where there's this very specific factual assessment of what did the judge actually say? Was that participating in a plea negotiation? Does it qualify? In our case, it is, by definition. Everybody is admitting that the judge is participating in the plea negotiations in our case. And the — as far as the reasonable probability that but for, it would have been different, unlike the other cases, there is a plea agreement — there is a decision to plead guilty is made at the settlement conference for Mr. Myers. So it's immediately — so we have three years of not resolving. The government is saying, going, I'll go to the plea agreement, I'll go to the settlement conference, but I don't think it's going to do anything because of the way things are going. And then when they walk out, they have a deal. So I think to say that it's not a reasonable probability that something would have been different, clearly that's the — Sotomayor, focusing on the government, when you look at the defendant, do you think he wouldn't have entered into the settlement — I mean, he wouldn't have entered into a plea? He's the one who wanted the settlement conference. Well, I — here's the thing. I think that the rule is set up to protect him and to protect the Court, and — And so do we look at him when we're reviewing whether or not it would have occurred anyway? I mean, as you pointed out, the government was the one that was, you know, resistant, not him. Right. Well, I think you look to him, but we look to — but I don't think that under the facts that are in the case today, which are relevant, the ones I cited, I don't think there can be much doubt that there is certainly a change. The change comes because one thing occurred, and that is the settlement conference. And the purpose for the bright-line rule that you can't do this, which is laid forth in Bruce, is because it carries a high, unacceptable risk that the defendant will be coerced. It protects the integrity of the judicial process, and it preserves the integrity of the ultimate plea afterwards. And I think that when you have a settlement conference where you have a local rule that says this is okay, you have two judges saying this is how we do it, the government and your court-appointed lawyer who the court hired to help you is saying this is how we do it, to say that the defendant then needs to be in a position to somehow know that there's a violation here. Well, the defendant — the defendant, we're not suggesting he needs to understand each and every aspect of the rules. He's relying on his counsel's advice as to the legal issues, presumably. So to the extent there's a problem with his initial lawyer, that's a whole other question, it would seem to me. Why don't we hear from the government? And we've exceeded your time, but I will give you some rebuttal time. Thank you very much. May it please the Court. Good morning, Your Honors. Owen Mardikin for the United States. The defendant in this case invited the district court to refer him to a voluntary settlement conference. He took part in that settlement conference and benefited by way of a cooperation plea agreement with the government. At his plea colloquy, he stated under oath that his plea was voluntary, and he never moved to withdraw his plea even after the Supreme Court decided Davila, months before he was sentenced. Referring this case to a magistrate judge for a settlement conference may have been error, but it was not plain error affecting the defendant's substantial rights. I'd like to deal very quickly with a point that the defendant raised before I talk about plain error, and that is the argument that this is supposedly not a right or not a defendant's right. This Court disagreed. In Scolari, on page 753, this Court held that Rule 11 protects the defendant's right to voluntarily explore settlement. The right is the right to a voluntary plea, ultimately. Certainly, it's a prescription on judicial conduct, but so are many rules. For example, this Court prescribes how a judge has to conduct settlement proceedings, but the reason for that is to protect the defendant's rights. The same is true here. In Davila, they acknowledge that there was a violation of the rule by the magistrate. Why do you fight that so much? I mean, it says right in the plain language of Rule 11c, no judicial participation. Why doesn't the government just acknowledge that that's what the rule says? Well, we do. We acknowledge that there was a violation. So there was a violation of the rule. We acknowledge error in this case, just not a plain error that affected the defendant's substantial rights. What Davila says to me is that there was a violation of the rule by the magistrate. That seems like a shift from your briefs. Exactly. In your briefs, I took you to be saying this wasn't an error because the conference was voluntary. You're no longer making that argument. No, I'm sorry. We said affirmatively it was invited error. It is error. Well, that's a different issue. That's a waiver issue. Let's just start. Let's start first with back to my question, which I think I understood the answer to. Yes. And that is you agree that it was error under Rule 11c, correct? Yes. Okay. No differently than the government's position in the Mondragon case. And but now you're saying the error does not affect substantial rights. It does not affect the defendant's substantial rights on the record in this case. And I just I had interpreted, I think, as the other panel members indicated, I'd interpreted your brief a little differently. So I just wanted to clarify that. Thank you. I'm sorry if my argument was too strong, but we do intend, we stick with the same position from Mondragon, that it was error. The plain error standard applies here. There are no cases that the defendant cites that I believe exist in the circuit courts that hold that a plain, that did not apply a plain error standard review to a Rule 11 violation of this kind. The cases that have addressed it specifically, Davila on remand in the 11th Circuit, Bradley in the Fourth Circuit, have expressly applied plain error review. In Kyle, of course, this case, this Court assumed but didn't apply plain error. But the record was a bit different there, because there was a statement from the Court that could be understood as a threat to the defendant, that he was going to get life if something didn't change soon. This case is very different. There was no reason why objection was futile or unlikely in this case. This defendant was futile or unlikely in this case. This defendant could simply have stayed silent and the case would have gone to trial. The district court's local rule, 11-1, it's quoted, or I'm sorry, it's actually reproduced at page 51 of the defendant's brief, says specifically that any party may unilaterally withdraw from a settlement conference at any time. So the fact that there's an initial referral, the fact that there's an order, you know, ordering the parties to submit briefing, doesn't matter. The defendant has the right, as does the government, frankly, to unilaterally withdraw at any time. Of course, that didn't happen here. And, of course, this is not a purely legal issue where this Court would excuse plain error review because the facts matter. That's what the Court said in Davila. The facts matter. And the facts in this case show no effect on the defendant's substantial rights. The key fact, and the record at this, the infamous status conference is interesting here because the Court says at the outset of the conference, the Court says, this is on page 14 of the excerpt of record, well, we have a trial date set, and he's talking to defense counsel. And he says, well, we can advance the trial date if you like. And the defendant says, well, you know, this is a quote. The defense counsel then says, our idea is to have our feet to the fire rather than have them in the fire. Okay. Those are not the words of a lawyer who wants to go to trial. And, in fact, the very next words out of his mouth are, well, what we really like is a settlement conference with a magistrate judge. And, of course, the status conference takes a turn from there. But the fact that the defendant raised this issue, which had never come up before, shows that he wasn't interested in going to trial. In fact, the record at page 16 also shows where the government discusses what had happened during this three years. The government says, we have been talking settlement in this case. There is absolutely no shred of evidence here that during the three years preceding this referral to the settlement conference, the defendant wanted to go to trial, except for the pure fact that a trial date was set. And we don't know whether that was set over the defendant's objection or not. In addition to that, all of the factors that the Eleventh Circuit looked at in Davila on remand to find a no effect on the defendant's substantial rights exist here. For example, he swore during the plea colloquy that his plea was voluntary, as in Davila. He had two months to reconsider in this case, and there were three months in Davila. He never moved to withdraw his plea in this case. In Davila, he did withdraw, move to withdraw his plea, but not for this reason, the Rule 11 reason. And fourth, the settlement judge was different from the sentencing judge. So for all those reasons that the Eleventh Circuit found telling in that case, in fact, that the defendant was not decisive, exist here as well. I mean, if you read between the lines, you have an experienced defense lawyer who wants the Court's help because obviously the client's not taking his advice or whatever, and he doesn't want to go to trial, but there is a certain patina of coercion in the setup, isn't there? I don't think the Court could read into the pure existence of the attorney-client relationship that there is coercion. There is nothing in the record to suggest that the defendant wasn't wholeheartedly behind his counsel in going to the settlement conference in this case. Now, certainly, had there been a different record, that could be the case. But this picture that's painted of the indigent, sick counsel who thinks he's going to trial and is being strong-armed by the defense counsel is, as far as the record goes, it's a fiction. It simply does not exist. No, I recognize, you know, I was saying that if you step back and look at what was probably happening, but I agree with you that we don't have facts in the record to support some of these inferences. Well, understood. And I think that's what the Supreme Court was saying in Davila, where they say the facts matter. We're not going to go for structural error where we just decide that this is unseemly and we're just going to remand every time this error, allegation comes before us. The facts matter and are not proved here. If he could show that he was coerced by his counsel, is that a claim he could make on collateral review for ineffective assistance? Oh, of course. Yes. It's a record he could make on collateral review. Also, if he wanted to claim, as he sort of implies, that there was some kind of coercion by the magistrate judge during the settlement conference, he could have made that record, but of course he didn't. An invited error, I think, applies here as well. This defendant, all the parties knew what rule he was going to make. I'm sorry. But just going back to that for a second, though, that's not really a record he could have easily made now. It's really a collateral review kind of record, right? How would he have made that record now for this appeal? No, no, I agree with Your Honor. These are both – I meant to compare that to the ineffective assistance of counsel issue. They are both issues he could have raised on a proper record on collateral review. As Your Honor's noted, Rule 11 has been the same for about 40 years. It was not a surprise to anyone what it said. It can be waived. It's a right like any other, as this Court recognized – or the Supreme Court, rather, recognized in Davila. And this Court recognized in Frank that invited error could apply in the Rule 11 violation context, as did, interestingly enough, the Fourth Circuit in Bradley. Which is a case that the defense cites frequently in both its opening and reply brief. What they don't mention is that footnote 4 of that opinion, the Court said, well, this is all because the defendant didn't ask for the settlement negotiations. Had the defendant asked, it would have been invited error. But so for invited error, we have to know that he knew about this right. And until Davila, do we really have any evidence that he knew about this right? I mean, even the government has changed its position since Davila. The government has, but the rule – the rule hasn't changed. Right. The government changed its interpretation of the rule. So why can't we give him the same benefit of the doubt that he didn't realize what this rule meant either? We did. We do. But, I mean, the government – the government takes positions, and generally it's the defendant who says, well, it's just a litigating position. You know, ironically, now I think they want to make – have the rule a force of law. But in Davila, the type of conduct that the Court disapproved of in Davila is the same kind of conduct that this Court disapproved of 20 years earlier in Bruce. The facts there and what is a Rule 11 violation there were no different from what historically had been the rule. And ultimately, this isn't a case – I see my time is out. I'll just close. It's not really about Rule 11. What it is about is sour grapes. The Supreme Court said in Vaughn that Rule 11 is not here to effectuate sour grapes. This defendant, he got what he wanted up until the moment of sentencing. And when he got a prison sentence, he's trying to undo the whole thing. The Court should not find plain error here and affirm. Thank you. Thank you. Would you give Mr. Hinckley a minute for rebuttal? Thank you very much. I do have a few comments. One is our reading of Scolari, and I would invite the Court to do it as well, that it never holds, contrary to the government's statement, that Rule 11c1 protects a defendant's rights. That was not our understanding. I would point out that the last comment made by the government about how Rule 11 has stayed the same and he should have known it, and the government admits to having changed his position, I would concur with what, at least I hear the sentiment from the Court, is the government's changed its position today on that issue as well. So to suggest that he – that there was anything like a – could even possibly be a knowing, voluntary, and intelligent waiver I think is not fair. I would lastly point out that I appreciate your time. Thank you. And we appreciate both of your arguments. The case of United States v. Myers is submitted.
judges: McKeown, Murguia, Friedland